UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TOMMY BROWN, HEATHER MCDOUGALL,<br><br>                Plaintiffs,<br><br>vs.<br><br>NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA,<br><br>                Defendant. | 4:17-CV-04176-LLP<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL<br><br>Docket No. 18 |

**INTRODUCTION**

      This matter is before the court on plaintiffs Tommy Brown and Heather McDougall's complaint based on the court's diversity jurisdiction. See Docket No. 1. Plaintiffs assert claims of breach of contract, fraudulent misrepresentation and deceit, unfair trade practices, and vexatious refusal to pay insurance benefits against defendant Nationwide Affinity Insurance Company of America ("Nationwide"), arising out of a claim plaintiffs submitted on their homeowner's insurance policy. Plaintiffs now move the court to compel certain discovery and to increase the number of interrogatories they are permitted to serve on Nationwide. See Docket No. 18. Nationwide opposes the motion. See Docket No. 23. The district court, the Honorable Lawrence L.

Piersol, referred plaintiffs' motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The following facts are taken from plaintiffs' complaint merely to provide context for the instant motion. The court implies no endorsement of the verity of these facts.

On August 1, 2017, plaintiffs owned a house insured by Nationwide when a hailstorm came through their Sioux Falls, South Dakota, neighborhood, causing significant damage. Plaintiffs allege extensive, visible damage was done to their shake shingle roof, windows and other elements of their home. They timely submitted a claim under their insurance policy to Nationwide. Hail damage was a covered loss under that policy.

Nationwide hired Allcat Claims Service, LLC ("Allcat"), a third party, to investigate the claim. Allcat sent its agent, Merle Schmidt, Jr., to inspect the damage.

After inspecting the plaintiff's home, Mr. Schmidt placed a phone call to what he thought was Nationwide's phone number. Inadvertently, however, he had in fact called plaintiffs' phone. Mr. Schmidt proceeded to leave a detailed voice message on "Nationwide's" (aka plaintiffs') phone.

In the message Mr. Schmidt recited detailed findings of his inspection. He indicated he had "a little dilemma that I'm running into" because he had seen evidence of hail damage on the roof, including soft metal elements and cedar-shake, and hail damage to the plaintiffs' windows. Furthermore, he was

of the opinion that the roof "would not sustain repairs" and would have to be entirely replaced, resulting in a large loss. He estimated the total loss could be "well over $100,000." Mr. Schmidt recommended to "Nationwide" that they send a general adjuster who did not have specific knowledge and experience with roofing issues to handle the claim.

Eleven days later, Nationwide gave plaintiffs a report on their loss indicating they valued the loss at $30,383.19. After deducting depreciation and the deductible, Nationwide offered to pay plaintiffs $3,850.89. The report from Nationwide to plaintiffs bore the signature of "Merle D. Schmidt, Jr." as its author. A Nationwide employee, Tracie Althaus, sent plaintiffs an email along with the "Schmidt" report explaining that their "shingles do not show signs of hail damage. They show hail spatter which happens when the hail knocks off the dirt and oxidization (which essentially cleans the shingle and does not cause damage)."

Mr. Brown contacted Ms. Althaus and asked her to explain the discrepancy between the report Nationwide had given plaintiffs and the voice mail message Mr. Schmidt had left on plaintiffs' phone. Ms. Althaus stated that Mr. Schmidt did not know what he was doing and his voicemail statements should not be credited.

Nationwide then hired an engineering firm from Kentucky to perform a second inspection of plaintiffs' home. This Kentucky firm concluded the hailstorm had not caused any damage to plaintiffs' cedar-shake shingles.

Plaintiffs present two issues in their motion to compel. First, they seek to know what reserves Nationwide set for their claim. Second, because Nationwide will not voluntarily share with them information pertinent to electronic discovery, plaintiffs seek an increase in the number of interrogatories they are allowed to propound from 25 to 40 so that they can query Nationwide about how it stores electronic information.

## DISCUSSION

**A.    Good Faith Efforts to Resolve the Issues**

A motion to compel requests for the production of documents is governed by Fed. R. Civ. P. 37.  That rule provides in pertinent part as follows:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

See Fed. R. Civ. P. 37(a)(1).

Likewise, the local rules in this district require a movant to attempt to informally resolve matters with his or her opponent before filing a discovery motion:

> No objection to interrogatories, or to requests for admissions, or to answers to either relating to discovery matters shall be heard unless it affirmatively appears that counsel have met, either in person or by telephone, and attempted to resolve their differences through an informal conference.  Counsel for the moving party shall call for such conference before filing any motion relating to discovery matters. . . .

See D.S.D. LR 37.1.

Here, plaintiffs assert, and have provided evidence to the court, that they exhausted their efforts to try to resolve these discovery matters with Nationwide prior to filing the instant motion. Nationwide does not dispute that the requirement of good-faith efforts to resolve the matters have been fulfilled. The court finds the prerequisite for filing the instant motion to compel has been met.

**B.    Reserve Information**

**1.    Work Product Doctrine**

The court addresses first plaintiffs' request for Nationwide's reserve information on their claim. "Reserves are an insurer's estimates of potential losses due to claims on its policies." Burke v. Ability Ins. Co., 291 F.R.D. 343, 349 (D.S.D. 2013) (quoting Spirco Envt'l Inc. v. Am. Int'l Specialty Lines Ins. Co., 2006 WL 2521618 at *1 (E.D. Mo. Aug. 30, 2006)).

When a case rests on a federal court's grant of diversity jurisdiction, although *state privilege law* applies as to an assertion of attorney-client privilege, *federal law* governs the assertion of work product doctrine as a barrier to discovery. PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002); Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (*en banc*). The work product doctrine was first established in Hickman v. Taylor, 329 U.S. 495 (1947). The court established the rule to prevent "unwarranted inquiries into the files and mental impressions of an attorney."

Rule 26 of the Federal Rules of Civil Procedure codifies the work product doctrine in federal courts:

> (b)(3) **_Trial Preparation: Materials._**
>
> (A) _Documents and Tangible Things._ Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> * * * *
>
> (5) **_Claiming Privilege or Protecting Trial-Preparation Materials._**
>
> (A) _Information Withheld._ When a party withholds information otherwise discoverable by claiming that the information is . . . subject to protection as trial-preparation material, the party must:
>
>> (i) expressly make the claim; and
>>
>> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(3)(A) & (5)(A).

Work product falls into two categories: "ordinary" and "opinion." Baker, 209 F.3d at 1054. Ordinary work product includes raw factual information. Id. Opinion work product involves an attorney's "mental impressions, conclusions, opinions or legal theories." Id.

6

A party seeking discovery of ordinary work product may overcome the doctrine by showing they have a substantial need for the materials and they cannot obtain the materials or their substantial equivalent by other means. Id. Opinion work product, however, enjoys almost total immunity; it can be discovered only in "very rare and extraordinary circumstances" as when the "attorney engaged in illegal conduct or fraud." Id.

The party resisting discovery must show that the materials were prepared in anticipation of litigation. PepsiCo, Inc., 305 F.3d at 817; FED. R. CIV. P. 26(b)(5)(A). Furthermore, that same party must "describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim." See FED. R. CIV. P. 26(b)(5)(A).

Here, Nationwide refused to produce reserve information about plaintiffs' claim on 10 separate documents. See Docket No. 24-2 (documents BATES stamped "Nationwide 0125, 0163, 0183-88, 0198, and 0370"). On April 5, 2018, Nationwide redacted these documents, produced them in redacted form to plaintiffs, and supplied a Vaughn[1]

---

[1] See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). A Vaughn index is a detailed list or index of material withheld usually accompanied by a precise rationale of the reasons it is being withheld. Although Nationwide titles its document a "Vaughn Index," by adopting that appellation, the court does not imply that the document actually meets the requirements for a true Vaughn index. As indicated elsewhere, the document is lacking in the kind of detail one envisions in a true Vaughn index and it is lacking in the detail required of Fed. R. Civ. P. 26(b)(5)(A).

index stating that the reason it was refusing to produce information about reserves was that such information was "not reasonably calculated to lead to admissible evidence." Id. In other words, Nationwide took the position these documents were irrelevant.

After receiving Nationwide's redacted documents and Vaughn index, plaintiffs wrote Nationwide providing case law that reserve information was discoverable and not privileged. See Docket No. 20-4. In response, Nationwide for the first time raised the issue of privilege and confidentiality with regard to the reserve information. See Docket No. 20-5. Nationwide set forth its position that the reserve information might be discoverable in a third-party bad faith action, but was not discoverable in a first-party bad faith claim. Id. Nationwide stated the following in its letter:

> While I would agree with you that, if this were a third-party contract situation and/or the underlying claim had been resolved when the bad faith claim was commenced, reserve information would likely be discoverable unless it was set in anticipation of litigation, *that is not this case.*

Id. at pp. 1-2 (emphasis supplied). While this sentence is lacking somewhat in clarity, it can be read as a concession by Nationwide that the reserve information was **not** created in anticipation of litigation. At the very least, it is clear that Nationwide did not affirmatively *assert* that reserve information was created in anticipation of litigation.

*After* plaintiffs filed their motion to compel, Nationwide *then* asserted the work product doctrine in resistance to the motion. See

Docket No. 23 at pp. 4-5. But in that pleading, Nationwide simply makes a bare-bones assertion that the reserves were set in plaintiffs' case in anticipation of litigation. Id. at p. 5. Nationwide provides no affidavit or other support for this factual assertion. Nationwide does not explain *who* set the reserve or *when* the reserve was set or subsequently altered or provide any other information about this allegedly protected information.

The test for whether a document was prepared in anticipation of litigation is a factual one:

> the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. GD Searle and Co., 816 F.2d 397, 401 (8th Cir. 1987).

Plaintiffs point out that Nationwide created its reserve figures long before plaintiffs filed this lawsuit. That alone is not determinative, but as the above quote from Simon makes clear, it is also not determinative even if the reserve was set after "litigation [was] already in prospect." Id. Here, Nationwide supplies no information whatsoever other than its bare-bones assertion.

It is Nationwide's burden to establish that the reserve in plaintiffs' case was set in anticipation of litigation in order to invoke the work product doctrine. PepsiCo, Inc., 305 F.3d at 817; FED. R. CIV. P.

9

26(b)(5)(A). Furthermore, Rule 26 requires Nationwide to "describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim" that work product protects them from discovery. See FED. R. CIV. P. 26(b)(5)(A).

Nationwide's failure to assert the work product doctrine in its Vaughn index would be enough, standing by itself, to defeat the application of the doctrine. Discovery objections are waived if they are not first asserted in the responses to the opposing party's discovery requests. Cardenas v. Dorel Juv. Grp., Inc., 230 F.R.D. 611, 621 (D. Kan. 2005). The court need not, and does not, rely on waiver, however. Here, even considering Nationwide's latest filing with the court, Nationwide fails to assert the facts required to (1) establish that the reserves were set in anticipation of litigation and (2) to establish the facts required by Rule 26 to allow the plaintiffs and the court to evaluate its assertion of work product doctrine as a shield to discovery.

It is true in the Simon case that the court found reserves in individual cases, as opposed to aggregate reserves, were protected under the work product doctrine, but the court did so because facts had been adduced establishing that the individual reserves "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim." Simon, 816 F.2d at 401. Here, Nationwide has adduced no facts from which the court can make those factual findings, nor has

Nationwide offered to supply the 10 documents to the court for *in camera* review.

A highly respected magistrate judge in the District Court for the District of Columbia has held that reserve information may be discoverable in a bad faith action, but not discoverable pursuant to the work product doctrine in a contract action for coverage under an insurance policy. See J.C. Associates v. Fidelity & Guaranty Ins. Co., 2003 WL 1889015 at *1 (D.D.C. Apr. 15, 2003). But here, plaintiffs assert both types of claims. Nationwide has not carried its burden to show the work product doctrine applies here. However, even if it had, the information is clearly relevant and discoverable in a bad faith action. It may be that the trial in this matter may have to be bifurcated between the contract claim and the bad faith claim. However, that issue does not inherently prevent discovery. As discussed in more detail below, the rules of evidence are tasked with the job of keeping out irrelevant evidence, but that is not a barrier to discovery. Accordingly, the court does not protect the discovery on the ground of work product.

    **2.    Relevance**

Nationwide did assert initially (in its Vaughn index), and continues to assert before this court, that reserve information is not relevant to plaintiffs' claims. Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure ' 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman, 329 U.S. at 507-08). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1

(D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).  Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).

To prove a bad faith cause of action against Nationwide, plaintiffs must show that Nationwide had no reasonable basis for denying their claim for insurance benefits, and that Nationwide acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.

Nationwide asserts that under its policy with plaintiffs, certain select portions of which were filed with the court (see Docket No. 24-3), it had no obligation to replace the entirety of plaintiffs' roof and other property if only a portion of that property was damaged.  See Docket No. 23 at pp. 5-6 (defendant's argument).  This is neither the place, nor is this the proper court,

nor is it the proper time, to render a definitive interpretation of Nationwide's obligations of payment under the policy with plaintiffs under the facts of this case. That issue will be determined by the district court on summary judgment or by a jury at trial. Plaintiffs' case includes the assertion that Nationwide's own agent told Nationwide that the roof had to be completely replaced, and could not be partially repaired. That issue is one in dispute between the parties.

Nor would this court endeavor to render a definitive reading of the insurance policy based on select portions only of the policy. Suffice it to say that the main issue in this case is whether Nationwide unreasonably valued plaintiffs' claim given the facts known to it and given the policy at issue and whether Nationwide acted in bad faith in hiring a second evaluator of the damage to plaintiffs' property.

As plaintiffs assert, they do not have to show the evidence they seek will be admissible at trial, only that it is relevant for discovery purposes. The court agrees. If Nationwide set its reserve at a figure far in excess of the amount they told plaintiffs their claim was valued at, that is certainly some evidence that Nationwide acted with knowledge or a reckless disregard for whether there was a reasonable basis for its actions. Kirchoff v. Amer. Cas. Co. of Reading, Penn., 997 F.2d 401, 405 (8th Cir. 1993) (district court did not err in admitting into evidence at trial CNA's reserve estimate of plaintiff's claim where the reserve was set at $300,000 and CNA's sole offer to plaintiff was $8,000 because the evidence was relevant to the insurer's lack of good faith); Burke, 291 F.R.D. at

14

349 (stating "[e]vidence related to reserves is generally relevant because '[t]he failure of an insurer to offer a reasonable amount to settle a claim, on a claim of bad faith breach of duty, might be evidenced by the insurer's setting aside a substantially greater amount of reserve for that claim.' "); Spirco Envr't Inc., 2006 WL 2521618 at *1 (stating evidence of bad faith may emerge if an insurer offered an amount to settle a claim that was far less than the amount of reserve for the claim); J.C. Associates, 2003 WL 1889015 at *1 (reserve information might be proof of bad faith, though reserve information might have questionable relevance and admissibility in a contract action for coverage under the insurance policy).

      The court is cognizant of the fact that this is a first-party bad faith action rather than a third-party action, but the lack of a definitive case on point from the South Dakota Supreme Court on the differences in the defendant's obligations under the two types of cases does not defeat plaintiffs' bad faith claim. When an issue of first impression as to the interpretation of an insurance contract is presented in South Dakota, the South Dakota Supreme Court has held whether there was bad faith depends on whether defendant's actions regarding the plaintiff's claim were "fairly debatable" under the law. See Bertelsen v. Allstate Ins. Co., 2009 S.D. 21, ¶¶ 20-21, 764 N.W.2d 495, 500 (Bertelsen I) (stating plaintiff may show a bad faith claim involving a worker's compensation statute never before interpreted that provided if an employer denied a claim as non-work related, any other insurer covering bodily injury "shall pay" according to its policy provisions and applying that statute

15

against an automobile insurer under its medical benefits provision); Mudlin v. Hills Materials Co., 2007 S.D. 118, ¶¶ 7-15, 742 N.W.2d 49, 51-54 (interpreting a coming-and-going scenario under a worker's compensation insurance policy and holding no bad faith occurred as a matter of law); and Isaac v. State Farm Mutual Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994) (holding that a jury question was created by plaintiff's bad faith claim even though there was no South Dakota law on point as to whether a worker's compensation set-off provision in the insurance policy was valid or void).

Under the broad definition of "relevance" for purposes of discovery, the court holds plaintiffs have sustained their burden of showing the reserve information is relevant. Accordingly, plaintiffs' motion to compel will be granted as to the reserve information.

**C.    Increase in Numbers of Interrogatories Allowed**

Rule 33 of the Federal Rules of Civil Procedure limits the use of interrogatories to 25 interrogatories per party served on another party. See Fed. R. Civ. P. 33(a)(1). That number may be increased with leave of the court if consistent with Rule 26(b)(1) & (2). Id.

The district court issued a scheduling order adopting the 25-interrogatory limit found in Rule 33. See Docket No. 13 at p. 2, ¶ 3. Plaintiffs now seek to increase that maximum number of interrogatories in order to query Nationwide about its electronic documents system. Plaintiffs assert Nationwide should have disclosed to them during their

discovery planning conference details about Nationwide's electronic documents system such as what type of technology systems Nationwide employs, the identity of Nationwide employees most knowledgeable in their operations, as well as the format in which documents would be produced and whether metadata is sought. See Docket No. 19 at p. 8. Because Nationwide refused to disclose this information at the discovery planning conference, plaintiffs seek an additional 15 interrogatories to obtain this information from Nationwide.

Rule 33 provides the court the latitude to grant plaintiffs' request, so long as the request is consistent with the scope of discovery and the limitations on frequency and extent found in Rule 26(b)(1) & (2). As stated above, the scope of discovery addressed in Rule 26(b)(1) is extremely broad. The court finds no inherent barrier to granting plaintiffs' request in the description of the scope of discovery in Rule 26.

Rule 26(b)(2) allows the court to limit discovery if it is not reasonably accessible, unreasonably cumulative, duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive. See Fed. R. Civ. P. 26(b)(2)(B) & (C). Nationwide makes no claim that the information is unduly burdensome, cumulative, duplicative or not reasonably accessible. It simply maintains that it is not obligated to volunteer this information upfront in the parties' planning meeting. Nationwide suggest plaintiffs can obtain the

17

information through other avenues such as document requests and depositions.

But there is nothing in the rules that requires plaintiffs to hire a court reporter and begin deposing Nationwide employees at considerable expense to find out this information. The Federal Rules are established to provide the just, speedy and inexpensive determination of every action. FED. R. CIV. P. 1. Accordingly, the court will grant plaintiffs' request in part. An additional 10 interrogatories may be served by plaintiffs only. Furthermore, the subject of those 10 additional interrogatories is limited solely to obtaining the type of information plaintiffs have set forth in their motion—the type and nature of Nationwide's electronic document system(s) and who among Nationwide's employees is most knowledgeable about those system(s).

**CONCLUSION**

Based on the foregoing facts, law, and analysis, plaintiff's motion to compel and to amend the scheduling order [Docket No. 18] is granted. Nationwide shall provide in discovery to plaintiff within 21 days unredacted versions of documents BATES stamped Nationwide 0125, 0163, 0183-88, 0198, and 0370. Furthermore, plaintiffs shall be granted an additional ten (10) interrogatories that they may serve on Nationwide, provided that the subject of inquiry of those interrogatories is limited to Nationwide's electronic document system(s) as further discussed in the body of this opinion.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED June 29, 2018.

BY THE COURT:

_VERONICA L. DUFFY_
VERONICA L. DUFFY
United States Magistrate Judge